UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RENITA GRIFFITH,**

      **Plaintiff,**

-v-                                      Case No.: 2:11-cv-433
                                                JUDGE SMITH
                                                Magistrate Judge Deavers

**KEMBA FINANCIAL CREDIT
UNION, INC.,** *et al.*,

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants City of Whitehall, Whitehall Police Department and Detective Lou Spezialetti's ("Whitehall Defendants") Motion for Summary Judgment (Doc. 93). Plaintiff has filed her response and this Motion is now ripe for review. For the reasons that follow, the Court **GRANTS** the Whitehall Defendants' Motion for Summary Judgment.

### I.   FACTS

On February 9, 2010, Plaintiff Renita Griffith entered Defendant Wal-Mart's store in Grove City, Ohio, and purchased a number of items, totaling $141.67. (Griffith Depo. at 11). To pay for these items, Plaintiff presented a personal check, drawn on her bank account with Defendant Kemba Financial Credit Union, along with her driver's license for identification purposes, to the cashier at Wal-Mart. The Wal-Mart cashier scanned the check through a Magnetic Ink Character Recognition ("MICR") reader, and waited for Plaintiff's receipt to print.

After the check was read, scanned, and electronically converted and accepted by the cashier and the register system, Griffith signed an electronic signature box to authorize the transaction, collected her items, and left the store.  Unknown to Plaintiff, her check actually cleared on the account of Mr. Christopher Ashby due to an error in the check acceptance process.  (Pl.'s Ex. 3; Ashby Depo. at 10).  Plaintiff Griffith and Christopher Ashby's six digit accounts with Kemba Financial Credit Union are the same, except for one digit in the middle of the account number.  The fourth digit of Plaintiff's account is an 8, while the fourth digit of Mr. Ashby's account is a 9.

Upon learning of this unauthorized withdrawal, Mr. Ashby contacted Defendant Kemba Financial Credit Union, where he was informed that he must file a police report with the local authorities before any money would be credited to his checking account. (Ashby Depo. at 10).  On March 6, 2010, Mr. Ashby filed a police report with the City of Whitehall Police Department, and the investigation was assigned to Defendant Detective Lou Spezialetti.

Detective Spezialetti conducted an investigation, which included contacting Wal-Mart to receive a copy of the receipt and the corresponding video surveillance relating to Plaintiff's purchase.  Wal-Mart complied with the request.  Based upon the information received from Wal-Mart, Detective Spezialetti determined that the suspect was Renita Griffith.

On March 17, 2010, Detective Spezialetti went to the last known address of Renita Griffith, but was informed by a neighbor that she no longer lived at that address.  (Spezialetti Depo. at 24-25).  Based on his investigation and what he believed to be probable cause, Detective Spezialetti filed a criminal complaint with the Franklin County Municipal Court and a warrant was issued for the arrest of Renita Griffith.  (Pl.'s Exs. 5 and 6).  Plaintiff was arrested

on April 23, 2010 by the Ohio State Highway Patrol. Plaintiff was released on bond the following Monday and retained counsel. (Griffith Depo. at 98–99).

On the day Plaintiff was arrested, she was driving home from work and a state trooper followed her home. She parked in her driveway and the officer stepped out of his car with a gun pointed towards her and ordered her to step out of the car with her hands in the air. She was told that she was being arrested for robbery. She was then taken to the parking lot of the Spaghetti Warehouse where she sat handcuffed for one and a half hours until the Whitehall Police arrived. She was then transported to Jackson Pike for booking and held until she was released on bond on Monday, April 26, 2010. (Griffith Depo. at 14-17).

Upon her release, Plaintiff spoke with KEMBA Financial Credit Union representative Lenia Neff who realized that the two accounts were only different by one number in the middle and that Plaintiff had sufficient funds in her account to pay for the Wal-Mart transaction. Ms. Neff determined that a check reading error had likely occurred and that Plaintiff had not engaged in any wrongdoing. (Neff Depo. at 11, 19, 33; Griffith Depo. at 118-19).

After several communications between Ms. Griffith's criminal defense counsel and the Grand Jury Prosecutor, it was decided that no information was to be taken before the grand jury and the charges were dismissed. The records of the complaint and her arrest have since been expunged in the Franklin County Municipal Court, pursuant to Ohio Revised Code § 2953.52. (Pl.'s Ex. 8).

As a result of this incident, Plaintiff had to spend two nights in jail and has had to deal with the stress and anxiety that came from this ordeal. Plaintiff describes that her arrest

adversely affected her employment, her social life, her relationship with her daughter, her mental health, and her income. Plaintiffs further stated:

> Emotionally, it's embarrassing. I feel sick. . . most of the time. I can't sleep at night. Like I said, I feel like I have no career. I feel like I got my education for nothing. I feel like I wasted all of my money on my education and now I can't even benefit from it. Health insurance was a big loss. . . . Emotionally, all of that stresses me out. I feel depressed. I don't want to go out, socialize; I don't want to meet anybody. [. . .] I just feel very, very, very out of place, uncomfortable with who I thought I was.

(Griffith Depo. at 60).

Plaintiff initiated this case against Defendants Kemba Financial Credit Union, Inc.[1], Wal-Mart Stores, Inc. #5815, Telecheck Services, Inc.[2], City of Whitehall, City of Whitehall Police Department, Detective Lou Spezialetti, The Ohio State Highway Patrol, and John Doe #1[3], on April 12, 2011. It was removed to this Court on May 18, 2011. Plaintiff asserts claims for unreasonable search and seizure, use of excessive force, and arrest without probable cause in violation of the 4th Amendment, negligence, negligent identification, malicious prosecution, false arrest and false imprisonment, negligent hiring, training, and retention. The Whitehall Defendants are the only Defendants remaining and they have moved for summary judgment on all of Plaintiff's claims against them.

---

[1] This case has been reported settled between Plaintiff and Defendants Kemba and Wal-Mart. A conditional dismissal entry has been entered with a final dismissal entry to follow.

[2] Plaintiff filed a Motion to remove Defendant Telecheck Services, Inc., asserting that after receiving discovery responses, she determined that there are no valid claims to pursue. Telecheck was dismissed from the case on October 17, 2011. (*See* Docs. 39 and 40).

[3] Plaintiff filed a Motion to remove The Ohio State Highway Patrol after determining that there are no claims to pursue against them. The Ohio State Highway Patrol was dismissed from the case on August 9, 2011. (*See* Docs. 23 and 25).

## II. SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587. The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-53. Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the

credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 257). The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Liberty Lobby*, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. *Liberty Lobby*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III. DISCUSSION

The Whitehall Defendants move for summary judgment on Plaintiff's claims of violation of her Fourth Amendment rights to be free from unreasonable searches and seizures and having probable cause to arrest her, as well a deprivation of her constitutional rights due to inadequate training by the Whitehall Police Department and/or customs of the City of Whitehall.  The Whitehall Defendants argue that there was no violation of Plaintiff's constitutional rights because Detective Spezialetti acted with probable cause and that they are entitled to qualified immunity.

**A.    Qualified Immunity**

The Whitehall Defendants assert that they are entitled to qualified immunity from Plaintiff's claims against them.  They assert that they did not violate any of Plaintiff's constitutionally protected rights and are therefore entitled to summary judgment on the issue of qualified immunity.  Plaintiff asserts, however, that the defense of qualified immunity does not protect the Whitehall Defendants from liability.

Under the doctrine of qualified immunity, government officials performing discretionary functions are immune from suit unless the plaintiff shows the official violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Conn v. Gabbert*, 525 U.S. 286, 290 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'"  *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (quoting *Harlow*, 457 U.S. at 806)).

The Court must apply a two-step test to determine whether qualified immunity protects a government official. *Conn*, 526 U.S. at 290; *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1358 (6th Cir. 1996). The first step is to determine whether a violation of a clearly established constitutional right has occurred. *Conn* 526 U.S. at 290; *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996). If a constitutional violation is found, the second step is to determine whether an objectively reasonable public official in the circumstances would have recognized that his conduct violated the clearly established constitutional right. *Conn*, 526 U.S. at 290; *Buchanan*, 99 F.3d at 1358; *Dickerson*, 101 F.3d at 1158.

To be clearly established at the time of the conduct in question, the constitutional right must have been recognized by the U.S. Supreme Court, the United States Court of Appeals for the Sixth Circuit, this Court or other courts within the Sixth Circuit, or, in some cases, courts of other circuits. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Dickerson*, 101 F.3d at 1158. "The contours of the right must be sufficiently clear that a reasonable person would understand that what he is doing violates that right." *Sheets*, 97 F.3d at 166. "This is not to say that an official action is protected by qualified immunity unless the very action has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

### 1. Clearly Established Constitutional Violation

Plaintiff Renita Griffith argues that the Whitehall Defendants violated her constitutional rights because they lacked probable cause to issue the arrest warrant and to arrest her on that warrant for theft. Plaintiff also alleges a claim for excessive force during her arrest.

8

The Court will therefore consider each of Plaintiff's claims to determine whether Defendants violated Plaintiff's clearly established constitutional rights in accordance with the first prong of the qualified immunity test.

### a. Probable cause to arrest Plaintiff

The Fourth Amendment requires that arrest warrants be issued only upon a showing of probable cause. *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003); *see also Radavansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007) ("The Fourth Amendment requires that 'a law enforcement officer may not seize an individual except after establishing probable cause that the individual has committed, or is about to commit, a crime.'"). Probable cause exists if "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Diamond v. Howd*, 288 F.3d 932, 936 (6th Cir. 2002) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Another consideration is whether the "'factual and practical considerations of every day life' could lead a reasonable person to believe that there is a probability that an illegal act has occurred or is about to occur." *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998) (citing *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).

In making the decision whether to arrest, "[o]fficers are not required to rule out every possible explanation other than the suspect's illegal conduct before making an arrest." *United States v. Reed*, 220 F.3d 476, 478 (6th Cir. 2000). A duty to investigate is not part of the probable cause determination. *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). Nor are officers required to "prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into

prosecutors." *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003); *see also Kelley v. Myler*, 149 F.3d 641, 646-47 (7th Cir. 1998) (refuses to add investigation to probable cause determination and grants qualified immunity to officers who arrested plaintiff for criminal trespass, even though plaintiff claimed to be and in fact was standing on a public right-of-way when she was arrested).

The burden is on a plaintiff bringing a Fourth Amendment claim to show the lack of probable cause. *Parsons v. City of Pontiac*, 533 F.3d 492, 500-01 (6th Cir. 2008); *see also Provience v. City of Detroit*, 2013 U.S. App. LEXIS 13704 (6th Cir. 2013).

In the case at bar, Defendant Detective Spezialetti was assigned to investigate the claim of theft filed by Mr. Ashby. Detective Spezialetti interviewed a Wal-Mart employee and attempted to interview Plaintiff by visiting her residence on her driver's license. Unable to locate Plaintiff at that address, Detective Spezialetti filed a complaint with the Franklin County Municipal Court and an arrest warrant was issued for her. Defendants argue that the Detective's investigation was sufficient to support probable cause for Plaintiff's arrest.

Plaintiff asserts that "Detective Spezialetti's investigation was so sparse that a reasonably prudent person would not have believed that there were sufficient facts to support the suspicion that Ms. Griffith had committed a crime." (Pl.'s Response at 7). Plaintiff references Detective Spezialetti's deposition testimony in which he admits spending approximately four hours on the investigation and that he would not have done anything differently, even now knowing that a mistake had been made. (Spezialetti Depo. at 33:13-15; 34:1-2; 33:6-12).

There is no question that Detective Spezialetti conducted an investigation and attempted to locate Plaintiff by visiting the address on her driver's license. Plaintiff attempts to create a

10

question of fact by arguing that the Detective could have done more, such as checking the phone book for Plaintiff's address.  But there is nothing that required the Detective to do more.  The same could be said that Plaintiff should have updated her current address with the Bureau of Motor Vehicles and obtained a new driver's license.

As set forth above with respect to the probable cause standard, however, Detective Spezialetti merely had to consider the facts and circumstances within his knowledge.  He had the facts of the complaint before him and Plaintiff's previous address.  The facts and circumstances led the Detective to believe that Plaintiff had committed the crime of theft by writing a check drawn on Mr. Ashby's bank account.

The Court does acknowledge that had the Detective located Plaintiff and presumably reviewed the check, this matter could have been resolved without Plaintiff being arrested.  However, the Court does not find that based on Detective Spezialetti's investigation that he should have done anything additional to locate Plaintiff.  This was a theft case for a nominal amount of money and presumably not the highest priority case for the City of Whitehall and its police department.  Accordingly, the Court finds that sufficient probable cause existed for Detective Spezialetti to file the complaint against Plaintiff that ultimately led to her arrest.  Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused.  *See Rainer v. Lis*, 1994 U.S. App. LEXIS 2190, at *9 (6th Cir. 1994) (citing *Criss v. City of Kent*, 867 F.2d 259 (6th Cir. 1988) ("an officer need not forego arrest pending further investigation if the facts as initially discovered provide probable cause").

### b. Excessive Force

Claims regarding police officers' use of excessive force in the course of an arrest or other seizure are governed by the Fourth Amendment. *See Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The Fourth Amendment requires that an officer's use of force be objectively reasonable, and courts must balance the consequences to the individual against the government's interests in effecting the seizure. *See Graham*, 490 U.S. at 396. This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. *Id.* at 396. "[R]easonableness must be evaluated from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Id.* Courts evaluating the reasonableness of force used "should pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001) (quoting *Graham*, 490 U.S. at 396).

Plaintiff argues that the Ohio State Highway Patrolmen, William S. Davis, used excessive force during her arrest. However, the Ohio State Highway Patrol and John Doe Patrolmen were dismissed from this case by Plaintiff on August 9, 2011. Plaintiff does not make any specific allegations regarding excessive force as it pertains to the Whitehall Defendants. Therefore, Plaintiff cannot show that the Whitehall Defendants violation her clearly established constitutional rights when she was arrested. Accordingly, Plaintiff's claims of excessive force are hereby dismissed.

### 2. Clearly Established

If the Court were to have found that the Defendants violated any of Plaintiff's constitutional rights, then the next step would be to ask whether the right was "clearly established" in a particularized sense, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

There is no question that a reasonable officer or detective in the same situation as any of the Defendants in this case, would have known that the there is a clearly established constitutional right to not be arrested without probable cause and to be free from excessive force. Thus, a reasonable officer would not have arrested Plaintiff unless he had probable cause to do so. Considering that probable cause did exist to file a complaint against Plaintiff and issue a warrant for her arrest, there was no violation of Plaintiff's clearly established constitutional rights.

### 3. Objectively Reasonable Officer test

Even if the Court were to have found that Defendants did violate Plaintiff's clearly established constitutional rights, Plaintiff cannot establish that an objectively reasonable officer faced with the same circumstances as Defendants would have recognized that the conduct violated a clearly established constitutional right. The final test for qualified immunity is whether an objectively reasonable officer under the circumstances would have known that the officers' conduct violated the constitution in light of the preexisting law.

13

Considering the circumstances in this case – that a complaint for theft was filed against Plaintiff by Mr. Ashby and it was determined that Plaintiff in fact passed the check at Wal-Mart resulting in the theft – then an objective officer faced with the same circumstances, who was trained in the laws of the City of Whitehall and the State of Ohio, would recognize that probable cause did exist to file a complaint against Plaintiff and ultimately issue a warrant for her arrest. An objective officer, just like Defendant Detective Spezialetti in this case, would have recognized that an unauthorized withdrawal occurred on the complainant Mr. Ashby's account and that Plaintiff was the one who passed the check.  Lenia Neff, an employee of Defendant Kemba, testified that in her twenty-eight years of working in the banking industry (15 years with Kemba), she was not aware of any other situation where money was taken from one member's account because of a check another member wrote.  Therefore, despite Plaintiff's arguments to the contrary, there was no reason for Detective Spezialetti to suspect that the money was withdrawn from Mr. Ashby's account for any other reason that something illegal.  (Neff Depo. at 16, 75-76).

The Court agrees with Defendants that the "truth of the matter is that no one knows how this happened."  (Defs.' Reply at 8).  A crime was reported by Christopher Ashby and the information obtained from Wal-Mart clearly established that Plaintiff Renita Griffith paid with a check that withdrew the funds from Mr. Ashby's account.  The actual check that could help explain why this happened was given back to Plaintiff and ultimately destroyed by her. Plaintiff's counsel even asked Detective Spezialetti, "Did this not raise a question in your mind, that if she signed her name to a check and the check – and the salesperson looked at her driver's license and identification form and she signed her own name that this may have been a mistake

14

somehow. . .?" (Spezialetti Depo. at 32). In hindsight, this may be the case. However, as Detective Spezialetti responded, "No. People steal people's account number and print them on a check, and they provide their information. The account number itself is stolen, so they present their own driver's license so it's easier to cash the check." (*Id.* at 32-33). Finally, Detective Spezialetti stated that knowing what he knows now, that a mistake had been made, he still would not have done anything differently. (*Id.* at 33).

Accordingly, the issuance of a complaint and warrant for Plaintiff's arrest and her ultimate arrest were not a violation of Plaintiff's clearly established constitutional rights. Detective Spezialetti and the Whitehall Defendants are therefore entitled to qualified immunity on Plaintiff's claims stemming from the issuance of the warrant for her arrest and her ultimate arrest, including any claims for false arrest and false imprisonment.

**B.     Claims against the City of Whitehall and the Whitehall Police Department**

Defendants argue that Plaintiff has "failed to identify or provide any policies customs or training that would support her claims" of deprivation of her constitutional rights due to inadequate training. (Defs.' Mot. at 12). Plaintiff, however, argues that genuine issues of material fact exist as to whether Defendants City of Whitehall and the Whitehall Police Department have an established policy and/or custom of inadequate training of its officers which tolerate, acquiescence [sic], condone, and/or ratify deliberate indifference to Ms. Griffith's and others' constitutional rights." (Pl.'s Response at 14).

Municipalities and other local government units can be sued under 42 U.S.C. § 1983. *Monnell v. Department of Social Services*, 436 U.S. 658 (1978). A municipality, however,

15

cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory.  *Id.* at 691.  The City of Whitehall therefore cannot be held liable simply as an employer of Detective Spezialetti, but instead, must have caused the constitutional violations asserted by Plaintiff through the execution of a governmental policy or custom.  *Id.*  The Sixth Circuit has stated that to satisfy the *Monell* requirements, a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987).

Plaintiff asserts that the constitutional violations she alleges in this case were caused by the City of Whitehall and the Whitehall Police Department's policy of inadequate training. There are limited circumstances in which an allegation of 'failure to train' can be the basis for liability under § 1983."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989).  To succeed on a failure to train claim, plaintiff must establish that the City acted with "deliberate indifference" to the rights of persons with whom the police came into contact.  *Id.* at 388-389. Plaintiff describes that "Detective Spezialetti's method of promotion, caseload, and method of assignment represents an overarching custom of inadequate training at the Whitehall Police Department."  (Pl.'s Response at 16).  Specifically, Plaintiff faults the policy of promoting based on seniority rather than a promotional test or merits-based examination.  Plaintiff further states that Detective Spezialetti received minimal training in the investigative field and that most of his training came from being with a more seasoned detective.  (*Id.*).  However, Plaintiff has failed to show any problem with this policy of training and promotion, specifically how Plaintiff was injured because of that policy.  Plaintiff's own expert witness, Edward Kallay, Jr., a retired detective with the Columbus Police Department, even confirmed that he was trained and

16

promoted basically the same way and that is the standard in central Ohio. (Kallay Depo. at 52-54).

Plaintiff also argues that Detective Spezialetti had an "excessively heavy caseload" which could lead to an attitude of indifference and taking shortcuts to clear his caseload. (Pl.'s Response at 16). Detective Spezialetti testified that he averages anywhere from 20 to 40 cases that he is investigating at one time. (Spezialetti Depo. at 85). Plaintiff, however, has failed to offer any specific evidence to prove that the City of Whitehall or the Whitehall Police Department acted with deliberate indifference to her rights in the training of its detectives or the assignment of cases. Plaintiff has not provided any evidence of an unconstitutional policy, nor has Plaintiff provided evidence that Detective Spezialetti's investigation, was, in fact, unconstitutional. The mere fact that Plaintiff believes that the detective should have spent more time investigating this case, or that she disagrees with the outcome of the investigation, does not amount to deliberate indifference and therefore Plaintiff has failed to establish that Defendants the City of Whitehall and the Whitehall Police Department failed to thoroughly train its officers and detectives. Defendants are therefore entitled to summary judgment in their favor on Plaintiff's claims against them.

## IV.  DISPOSITION

For all of the foregoing reasons, the Court **GRANTS** the Whitehall Defendants' Motion for Summary Judgment.

The Clerk shall remove Document 93 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**